IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GORDON POTTS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-2575-B |
| | § | |
| WALGREEN CO., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Walgreen Co. filed a Motion for Sixty-Day Abatement. *See* Dkt. No. 34 (the "Motion to Abate"). Walgreen explains that "[t]he pre-suit notice of claim that Plaintiff Gordon Potts ('Plaintiff' or 'Potts') provided to Defendant Walgreen Co. contained an authorization, which did not comply with Texas Civil Practice Code Section ('CPRC') 74.052, and which did not allow Walgreen Co. to investigate Plaintiff's claims" and that "[n]ow that Plaintiff has provided a complete authorization and list of medical providers in response to Walgreen Co.'s written discovery, Walgreen Co. respectfully requests a sixty-day abatement of the case to obtain Plaintiff's medical records prior to resuming discovery." *Id.* at 1.

United States District Judge Jane J. Boyle has referred the Motion to Abate to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 42.

Potts filed a response, *see* Dkt. No. 40, and Walgreen filed a reply, *see* Dkt. No. 48.

For the reasons explained below, the Court GRANTS Defendant Walgreen Co.'s Motion for Sixty-Day Abatement [Dkt. No. 34].

## Background

As Walgreen explains the background to its Motion to Abate,

> [p]ursuant to the Texas Medical Liability Act, notice of a health care claim under CPRC 74.051 must be accompanied by a medical authorization in the form specified by CPRC 74.052. *See* TEX. CIV. PRAC. & REM CODE ANN.§ 74.052(a) (West 2018).
>
> A Plaintiff's failure to provide the required authorization (along with the notice of health care claim) shall abate all further proceedings against the health care provider receiving the notice until sixty (60) days following receipt by the health care provider of the required authorization. *See id.*
>
> CPRC Section 74.051(a) "requires that notice must be accompanied by [an] authorization form for release of protected health information as required under Section 74.052 permitting the health care provider access to the claimant's pertinent medical records." *See Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 71 (Tex. 2011)(internal quotations omitted).
>
> The pre-suit medical authorization that Plaintiff provided to Walgreen Co. was defective as to the form of the authorization.
>
> More importantly, Plaintiff's pre-suit authorization listed only two providers, obviously an incomplete list when compared to Plaintiff's interrogatory responses where thirteen providers were identified. Moreover, Plaintiff's pre-suit authorization expressly excluded a dermatologist provider by claiming that the records from the dermatologist were not relevant to the investigation of this matter.
>
> Exclusion of a dermatologist provider is especially problematic for Walgreen Co. in the defense and investigation of Plaintiff's claims because Plaintiff specifically is claiming dermatological injuries as a result of taking the incorrect medication.
>
> Paragraphs eleven and fourteen of Plaintiff's first amended petition allege that Plaintiff developed a skin rash and welts as a result of this incident. Paragraph fourteen claims that Plaintiff has permanent scarring as a result of this incident.
>
> Despite these claims, by failing to provide a complete list of health care providers, and by excluding a dermatologist provider, Plaintiff thwarted the express purpose of CPRC Section 74.052 – to allow Walgreen Co. to obtain Plaintiff's records and investigate the claim prior

to the lawsuit being filed.

> Now that Walgreen Co. finally has a complete list of Plaintiff's medical providers and a proper unrestricted medical authorization, Walgreen Co. requests a sixty-day abatement of this case and all discovery, as provided by of CPRC Section 74.052, so that it may obtain Plaintiff's records as it was not able to do pre-suit.

Dkt. No. 34 at 1-2. Walgreen requests "a sixty-day abatement of this case and all discovery, so that it may obtain Plaintiff's records prior to continuing with discovery in this matter." *Id.* at 3.

Potts opposes the requested abatement, contending that,

> [p]rior to the institution of this lawsuit, on June 12, 2017, it is undisputed that Plaintiff provided Defendant Walgreen Co. ("Walgreens") pre-suit notice of its claim and a medical authorization pursuant to the requirements of TEX. CIV. PRAC. & REM CODE §§ 74.051 and 74.052. *See* Ex. A, Potts' Notice Letter dated June 12, 2017. Then on January 5, 2018, Plaintiff again provided a HIPAA authorization (Ex. B) and an authorization for the release of medical records (Ex. C) with his Responses to Walgreens' Discovery Request. *See* Ex. B and Ex. C. Defendant failed to seek any records from Potts' medical providers after receiving an authorization in June 2017, listing Potts providers for the last five (5) years.

Dkt. No. 40 at 2 (footnote omitted). Potts further explains that,

> [i]n Plaintiff's June 2017 authorization, he identified his primary care doctor, which has attended almost all of his medical needs in the five years preceding the accident. He also identified a dermatologist, a dentist, and Defendant since a pharmacy is considered a health care provider under the Texas Medical Liability Act.
> With the exception of one health care provider, who Potts mistakenly omitted from the list of excluded providers on its June 2017 authorization, all other health care providers identified in response to Walgreens' Interrogatory were either Potts' health care providers prior to the five year cut off, or were identified in the authorization as health care providers. Ex. A. The sole omitted health care provider examined Potts for an unrelated blood pressure condition three years prior to the dispensing error. As Potts has not alleged heightened blood pressure as a result of the dispensing error, this provider would have been listed as

> an excluded provider, and thus, no documents would have been produced pursuant to the language of the authorization.
>
> Potts only made a minor and insignificant mistake in the authorization; thus, he has shown that he substantially complied with the statute. ....
>
> Plaintiff listed two medical providers as excluded providers under the authorization, a dermatologist and a dentist. Ex. A. Defendant takes issue with Plaintiff's exclusion of only the dermatologist and claims that by excluding the dermatologist, Plaintiff has thwarted the express purposes of TEX. CIV. PRAC. & REM CODE 74.052. Def. Motion to Abate at *2. Again, Defendant cites no supportive exhibits for this argument and fails to point out that it did not investigate the claim of Potts in any manner prior this lawsuit being filed.
>
> However, to be compliant with the applicable statute, TEX. CIV. PRAC. & REM CODE 74.052 requires that "a medical authorization need only be in the form specified by this section." Only when an authorization in the form specified fails to accompany the notice of health care claim shall there be any abatement of the proceedings. *Id.* § 74.052.
>
> Here, Potts provided the required authorization and the authorization form allowed the defendant to obtain medical records from other providers (primary care physician) to assist in evaluating Plaintiff's claim. Plaintiff excluded a dermatologist that evaluated him for an unrelated skin condition almost two years prior to the dispensing error. Consequently, pursuant to the language of the authorization form found in § 74.052, Plaintiff is entitled to "contend that such health care information is not relevant to the damages being claimed or to the physical, mental, or emotional condition of [Plaintiff]." *Id.* § 74.052(c). Clearly, this statutory language is intended to provide a claimant with a method to prevent a party from needlessly digging into all of his private medical history.

*Id.* at 3-4, 6-7.

Potts contends that his "Notice and Authorization (Ex. A) were not deficient and complied with TEX. CIV. PRAC. & REM CODE §§ 74.051 and 74.052" and "requests this Court deny Defendant's Motion for Sixty-Day Abatement." *Id.* at 8.

Walgreen replies that "Plaintiff's pre-suit authorization listed only two providers, obviously an incomplete list when compared to Plaintiff's interrogatory

-4-

responses (provided *in camera* to protect Plaintiff's privacy) where thirteen providers were identified" and that "Plaintiff's pre-suit authorization expressly excluded a dermatologist provider by claiming that the records from the dermatologist were not relevant to the investigation of this matter." Dkt. No. 48 at 1.

Walgreen further replies that

> [t]he statutory scheme set forth by the Texas Legislature in the Texas Medical Liability Act provides that Walgreen Co. is entitled to obtain Plaintiff's records before suit was filed, and before discovery is commenced by Plaintiff.
> Plaintiff's actions in withholding relevant providers in his pre-suit authorization deprived Walgreen of the opportunity to investigate Plaintiff's claims. Simply put, Plaintiff's actions deprived Walgreen Co. of the statutory period.
> Walgreen Co. has been forced to respond to Plaintiff's discovery, produce hundreds of pages of documents, defend a frivolous motion to compel filed by Plaintiff, extend its expert deadline, seek an abatement, all the while not having had the statutory period to investigate Plaintiff's claims as the Texas Legislature had intended.
> Walgreen respectfully suggests that it is entitled to the statutory period of sixty days to obtain Plaintiff's records and obtain without having to respond to Plaintiff's motions or take other actions in this case.

*Id.* at 1-2.

And Walgreen notes that "Plaintiff admits he omitted two providers form his pre-suit authorization – a doctor who treated him for high blood pressure and a dermatologist" – and therefore "admits he did not comply with the statute, and now that Plaintiff has complied with the Texas Medical Liability Act, Walgreen Co. is entitled to a sixty-day abatement," where, "[a]lthough Plaintiff [] in this case did not fail to list all of his providers, he failed to list some of his providers, and thereby hindered the legislative intent." *Id.* at 3, 5.

Walgreen reports that it "subpoenaed the Plaintiff's records within two weeks of getting Plaintiff's discovery responses, and requested that its records service put a 'rush' on obtaining the records" and that Walgreen's "attorneys and Paralegals have followed up with the records service on several occasions, and have learned that the delay is due to the providers not yet providing the records" but that, "due to a delay in receiving the records from Plaintiff's providers, Walgreen does not yet have any of the records it subpoenaed to investigate Plaintiff's claims and preexisting medical history" and, "[a]t this time, ... does not know how long it will take to receive Plaintiff's records, or specifically what experts it will need." *Id.* at 1, 3.

**Legal Standards**

Texas Civil Practice and Remedies Code § 74.051 provides:

(a) Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.

(b) In such pleadings as are subsequently filed in any court, each party shall state that it has fully complied with the provisions of this section and Section 74.052 and shall provide such evidence thereof as the judge of the court may require to determine if the provisions of this chapter have been met.

(c) Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.

(d) All parties shall be entitled to obtain complete and unaltered copies of the patient's medical records from any other party within 45 days from

the date of receipt of a written request for such records; provided, however, that the receipt of a medical authorization in the form required by Section 74.052 executed by the claimant herein shall be considered compliance by the claimant with this subsection.

(e) For the purposes of this section, and notwithstanding Chapter 159, Occupations Code, or any other law, a request for the medical records of a deceased person or a person who is incompetent shall be deemed to be valid if accompanied by an authorization in the form required by Section 74.052 signed by a parent, spouse, or adult child of the deceased or incompetent person.

TEX. CIV. PRAC. & REM. CODE § 74.051. Texas Civil Practice and Remedies Code § 74.052, in turn, provides:

(a) Notice of a health care claim under Section 74.051 must be accompanied by a medical authorization in the form specified by this section. Failure to provide this authorization along with the notice of health care claim shall abate all further proceedings against the physician or health care provider receiving the notice until 60 days following receipt by the physician or health care provider of the required authorization.

(b) If the authorization required by this section is modified or revoked, the physician or health care provider to whom the authorization has been given shall have the option to abate all further proceedings until 60 days following receipt of a replacement authorization that must comply with the form specified by this section.

(c) The medical authorization required by this section shall be in the following form and shall be construed in accordance with the "Standards for Privacy of Individually Identifiable Health Information" (45 C.F.R. Parts 160 and 164).

### AUTHORIZATION FORM FOR RELEASE OF PROTECTED HEALTH INFORMATION

Patient Name:_____ Patient Place of Birth:_
Patient Address: _____ Street_City, State, ZIP
Patient Telephone:_____ Patient E-mail:_

NOTICE TO PHYSICIAN OR HEALTH CARE PROVIDER: THIS AUTHORIZATION FORM HAS BEEN AUTHORIZED BY THE TEXAS LEGISLATURE PURSUANT TO SECTION 74.052, CIVIL PRACTICE AND REMEDIES CODE. YOU ARE REQUIRED TO PROVIDE THE MEDICAL AND BILLING RECORDS AS REQUESTED IN THIS AUTHORIZATION.

A. I, _____ (name of patient or authorized representative), hereby authorize _____ (name of physician or other health care provider to whom the notice of health care claim is directed) to obtain and disclose (within the parameters set out below) the protected health information and associated billing records described below for the following specific purposes (check all that apply):

    [ ] To facilitate the investigation and evaluation of the health care claim described in the accompanying Notice of Health Care Claim.
    [ ] Defense of any litigation arising out of the claim made the basis of the accompanying Notice of Health Care Claim.
    [ ] Other–Specify:_____

B. The health information to be obtained, used, or disclosed extends to and includes the verbal as well as written and electronic and is specifically described as follows:

    1. The health information and billing records in the custody of the physicians or health care providers who have examined, evaluated, or treated _____ (patient) in connection with the injuries alleged to have been sustained in connection with the claim asserted in the accompanying Notice of Health Care Claim.

    Names and current addresses of treating physicians or health care providers:
      1._____
      2._____
      3._____
      4._____
      5._____
      6._____
      7._____
      8._____

This authorization extends to an additional physician or health care provider that may in the future evaluate, examine, or treat _____ (patient) for injuries alleged in connection with the claim made the basis of the attached Notice of Health Care Claim only if the claimant gives

notice to the recipient of the attached Notice of Health Care Claim of that additional physician or health care provider;

    2. The health information and billing records in the custody of the following physicians or health care providers who have examined, evaluated, or treated _____ (patient) during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim. Names and current addresses of treating physicians or health care providers, if applicable:

1._____
2._____
3._____
4._____
5._____
6._____
7._____
8._____

C. Exclusions

    1. Providers excluded from authorization.

    The following constitutes a list of physicians or health care providers possessing health care information concerning _____ (patient) to whom this authorization does not apply because I contend that such health care information is not relevant to the damages being claimed or to the physical, mental, or emotional condition of _____ (patient) arising out of the claim made the basis of the accompanying Notice of Health Care Claim. List the names of each physician or health care provider to whom this authorization does not extend and the inclusive dates of examination, evaluation, or treatment to be withheld from disclosure, or state "none":

1._____
2._____
3._____
4._____
5._____
6._____
7._____
8._____

2. By initialing below, the patient or patient's personal or legal representative excludes the following information from this authorization:
_____ HIV/AIDS test results and/or treatment
_____ Drug/alcohol/substance abuse treatment
_____ Mental health records (mental health records do not include psychotherapy notes)
_____ Genetic information (including genetic test results)

D. The persons or class of persons to whom the patient's health information and billing records will be disclosed or who will make use of said information are:
1. Any and all physicians or health care providers providing care or treatment to _____ (patient);
2. Any liability insurance entity providing liability insurance coverage or defense to any physician or health care provider to whom Notice of Health Care Claim has been given with regard to the care and treatment of _____ (patient);
3. Any consulting or testifying experts employed by or on behalf of _____ (name of physician or health care provider to whom Notice of Health Care Claim has been given) with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;
4. Any attorneys (including secretarial, clerical, experts, or paralegal staff) employed by or on behalf of _____ (name of physician or health care provider to whom Notice of Health Care Claim has been given) with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;
5. Any trier of the law or facts relating to any suit filed seeking damages arising out of the medical care or treatment of _____ (patient).

E. This authorization shall expire upon resolution of the claim asserted or at the conclusion of any litigation instituted in connection with the subject matter of the Notice of Health Care Claim accompanying this authorization, whichever occurs sooner.

F. I understand that, without exception, I have the right to revoke this authorization at any time by giving notice in writing to the person or persons named in Section B above of my intent to revoke this authorization. I understand that prior actions taken in reliance on this authorization by a person that had permission to access my protected

health information will not be affected. I further understand the consequence of any such revocation as set out in Section 74.052, Civil Practice and Remedies Code.

G. I understand that the signing of this authorization is not a condition for continued treatment, payment, enrollment, or eligibility for health plan benefits.

H. I understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and may no longer be protected by federal HIPAA privacy regulations.

Name of Patient
_____
Signature of Patient/Personal or Legal Representative
_____
Description of Personal or Legal Representative's Authority
_____
Date
_____

TEX. CIV. PRAC. & REM. CODE § 74.052.

The 60-day notice letter requirement applies to cases pending in federal court under the Court's diversity jurisdiction. *See, e.g.*, *Baber v. Edman*, 719 F.2d 122, 123 (5th Cir. 1983). "The Legislature's purpose in requiring notice in a medical liability suit is to encourage pre-suit negotiations, settlement, and reduce litigation costs." *Rabatin v. Vazquez*, 281 S.W.3d 563, 566 (Tex. App. – El Paso 2008, no pet.); *accord Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) (explaining that "the purpose of the notice provision ... is to encourage negotiations and settlement of disputes prior to suit, thereby reducing litigation costs"; that "[t]he Legislature intended that by requiring a potential claimant to authorize the disclosure of otherwise privileged information sixty days before suit is filed, the statute [would] provide[ ] an

opportunity for health care providers to investigate claims and possibly settle those with merit at an early stage"; and that, "[b]y encouraging pre-suit negotiation and settlement, the authorization requirement furthers an original goal of the [Medical Liability and Insurance Improvement Act (MLIIA)], resolving claims before suit is filed" (internal quotation marks and citations omitted)).

As another judge in this district has explained,

> [i]n *Schepps v. Presbyterian Hospital of Dallas*, 652 S.W.2d 934, 938 (Tex. 1983), [which involved a prior but nearly identical version of the statute,] the Texas Supreme Court ruled that dismissal is not a proper remedy for a failure to provide the 60-day notice letter. It "conclude[d] that to bar prosecution for failure to give notice would constitute ... an undue restriction of claimant's right[ ]" and held that the notice provision was "mandatory, yet only subjecting the cause to abatement." *Id.* The plain language of § 74.052 also states that a failure to provide a medical authorization abates "all further proceedings against the physician or health care provider receiving the notice until 60 days following receipt ... of the required authorization." TEX. CIV. PRAC. & REM. CODE § 74.052(a).

*Bunch v. Mollabashy*, No. 3:13-cv-1057-G(BH), 2015 WL 1378698, at *6 (N.D. Tex. Mar. 26, 2015) (footnote omitted). "Compliance with [Section 74.051(a)'s] procedural requirement is mandatory; however, failure to comply will not result in dismissal of the claim." *Rice v. Pfizer, Inc.*, No. 3:06-cv-757-M, 2006 WL 1932565, at *3 (N.D. Tex. July 7, 2006). Rather, "where a plaintiff has failed to give notice sixty days prior to the filing of suit, upon motion of the defendant, the cause should be abated for sixty days." *Schepps*, 652 S.W.2d at 938.

## Discussion

Potts admits that he omitted one health care provider from the list of excluded

providers on his June 12, 2017 authorization but contends that, because he only made a minor and insignificant mistake in the authorization, he has shown that he substantially complied with the requirements of Texas Civil Practice and Remedies Code §§ 74.051 and 74.052.

The Court cannot agree. In this context, the Waco Court of Appeals recently explained that "'[s]ubstantial compliance' means that one has performed the essential requirements of a statute" and that, "[i]f deviations from the performance required by statute do not seriously hinder the Legislature's purpose in imposing the requirement, then there has been substantial compliance." *Borowski v. Ayers*, 524 S.W.3d 292, 299 (Tex. App. – Waco, 2016, pet. denied). That court explained that "'substantial compliance'" does not permit a party to ignore statutory requirements"; that "[t]he courts possess no legislative powers" and "cannot excuse plaintiffs' noncompliance with statutory requirements merely because defendants, despite plaintiffs' noncompliance, are able to accomplish some of the Legislature's purpose in imposing the statutory requirements"; and that "a party must still have performed the essential requirements of the statute for the party to have substantially complied with it." *Id.* at 305 (internal quotations marks omitted).

And, the Waco Court of Appeals concluded, "an essential requirement of sections 74.051 and 74.052 is listing in the authorization form the name and current address of any health care provider who examined, evaluated, or treated the patient during the five years before the incident that was the basis of the notice." *Id.* at 306. The *Borowski* Court held that the authorization form in that case "did not substantially comply with

-13-

sections 74.051 and 74.052," where "failing to list any of the names and addresses of a patient's treating physicians or health care providers during the five years before the incident made the basis of the notice of health care claim seriously hinders the statutory design to enhance pre-suit investigation, negotiation, and settlement." *Id.* at 303. And, the *Borowski* Court noted, "even if an authorization form is technically capable of being used to obtain a patient's protected health information, failing to identify from whom or from where to obtain the protected health information seriously interferes with the statutory design to enhance pre-suit investigation, negotiation, and settlement." *Id.* at 304.

> The purpose of authorizing potential defendants to obtain this specific protected health information is to provide the potential defendants the opportunity to explore the patient's past medical history, including preexisting conditions, for purposes of evaluating and potentially settling the claim.
> By omitting from the authorization form the list of the patient's treating physicians for the previous five years, the authorization form fails to identify where the protected health information might be located. This seriously hinders potential defendants from exploring the patient's past medical history for the statute's purposes. And the purpose of the notice requirement and the pre-suit negotiation period triggered by the notice requirement are not fulfilled if potential defendants are deprived of the opportunity to explore the patient's past medical history for the statute's purposes.

*Id.* at 304-05 (citations omitted).

The decision in *Borowski* followed the decisions of four other Texas Court of Appeals decisions in which the plaintiffs "all failed to list in the authorization forms the name and current address of any health care provider who examined, evaluated, or treated the patient during the five years before the incident that was the basis of the

notice of health care claim." *Id.* at 304.

The First Court of Appeals in Houston recently followed these decisions and distinguished the Dallas Court of Appeals decision on which Potts relies, *Mock v. Presbyterian Hospital of Plano*, 379 S.W.3d 391 (Tex. App – Dallas 2012, pet. denied), "[in which] an authorization form was completed erroneously by naming the claimant's attorney in the form's blank where instead it should have named the physician or health care provider being authorized to obtain protected health information." *Davenport v. Adu-Lartey*, 526 S.W.3d 544, 553 (Tex. App. – Houston (1 Dist.) 2017, pet denied) (citing *Mock*, 379 S.W.3d at 394). The *Davenport* decision explained that

> [t]he court [in *Mock*] observed that the form "correctly tracked the statutorily prescribed text" and apart from the apparently "inadvertent mistake," the form "complied with the statutory requirements, satisfied the legislative purpose, and triggered the tolling of the limitations period." *Id.* at 395. Notably, the mistake at issue in *Mock*, which the court noted could be "fixed quite easily," id. at 395 n.3, was obvious on the face of the document.
> 
> In contrast to *Mock*, the error at issue in this case and in [*Johnson v. PHCC-Westwood Rehabilitation & Health Care Center*, 501 S.W.3d 245 (Tex. App. – Houston [1st Dist.] 2016, no pet.)] – omissions from the lists of health care providers – would not be self-evident unless the party receiving the notice had independent knowledge of the other health care providers. To the extent the authorization in this form in this case failed to list Dr. Adu-Lartey and AOK, that was an omission that would have been self-evident to both Dr. Adu-Lartey and AOK, and to the extent either of them needed the authorization form to secure relevant medical records from the other, as in *Mock*, it was an error susceptible of being "fixed quite easily," which therefore would not frustrate the purpose of providing the form. Even more like *Mock*, the identification of Dr. Adu-Lartey but not AOK as parties authorized to obtain medical records was likewise an error that could be recognized from the face of the document and "fixed quite easily." On the other hand, as was the case in *Johnson*, Davenport's failure to include his other health care providers who were not known already to Dr. Adu-Lartey or AOK did interfere with their ability to conduct a presuit investigation.

526 S.W.3d at 553.

The Court determines that Potts's reliance on *Mock*'s reasoning and holding is unavailing for the same reasons here. And his other arguments for substantial compliance similarly fail to persuade:

- That Potts believes that the omitted provider would have been listed as not relevant to the damages being claimed or to the physical, mental, or emotional condition of Potts does not change the fact that Section 74.052(c) required that the provider actually be listed and identified for Walgreen, which might have challenged Potts's assessment but could not without Potts, as the patient with access to this information, disclosing the provider. *See generally In re Collins*, 286 S.W.3d 911, 916-17, 919-20 (Tex. 2009).

- That omitting this provider's information may have been an oversight does not dictate that Potts substantially complied with the statute's requirements. *See, e.g.*, *Borowski*, 524 S.W.3d at 301-02.

- That Walgreen learned the identify of the omitted provider through discovery requests in this case does not excuse Potts's noncompliance with the statute – or qualify it as substantial compliance – because "the fact that the partial disclosures made by [Potts may have] facilitated discovery requests made later in the course of litigation do not serve the statutory purpose of encouraging a presuit resolution." *Davenport*, 526

- S.W.3d at 554.

- That Walgreen may have had access through its own prescription history records (assuming that it could permissibly use them for this purpose) to the identity of some of Potts's health care providers does not excuse Potts's noncompliance where, as Walgreen notes, Walgreen "had no way of knowing if Plaintiff was using other pharmacies and providers about which Walgreen Co. did not know" – including providers who may not have prescribed anything to Potts – and Sections 74.051 and 74.052 do "not contain any exceptions for providers which are known versus unknown." Dkt. No. 48 at 4.

And, finally, whether Walgreen in fact used the information that Potts did disclose in June 2017 to investigate Potts's claim is beside the point. The statute requires a claimant to "list[] in the authorization form the name and current address of any health care provider who examined, evaluated, or treated the patient during the five years before the incident that was the basis of the notice" so that any potential defendant will be afforded "the opportunity to explore the patient's past medical history for the statute's purposes." *Borowski*, 524 S.W.3d at 304-05, 306; *accord Carreras*, 339 S.W.3d at 73 ("The Legislature intended that 'by requiring a potential claimant to authorize the disclosure of otherwise privileged information sixty days before suit is filed, the statute [would] provide[ ] an opportunity for health care providers to investigate claims and possibly settle those with merit at an early stage.'" (quoting *Collins*, 286 S.W.3d 916-17)).

For all these reasons, the Court cannot accept Potts's contention that "the Legislature's intent was not frustrated by an accidental omission of a physician that would not have been investigated by Defendant and would have been on the list of excluded health care providers of the authorization." Dkt. No. 40 at 4-5.

The Court determines that Walgreen is entitled, on its motion, to a 60-day abatement of this case and all discovery, pursuant to Texas Civil Practice and Remedies Code §§ 74.051 and 74.052 and *Schepps*.

## Conclusion

For the reasons explained above, the Court GRANTS Defendant Walgreen Co.'s Motion for Sixty-Day Abatement [Dkt. No. 34] and ORDERS that this case will be abated until **April 27, 2018**. The Court directs the Clerk of the Court to administratively close this case and submit a JS-6 form to the Administrative Office, thereby removing this case from the statistical records, and to then, on **April 30, 2018**, administratively reopen the case.

Further, counsel for the parties must (1) confer by **May 7, 2018**, in person or by telephone, in an attempt to – in light of Walgreen's efforts during this period of abatement – resolve as much of Plaintiff's Motion to Compel Discovery [Dkt. No. 30] by agreement as possible and (2) submit a joint status report by **May 14, 2018** that describes (a) the names of the attorneys who participated in the conference; (b) the date that the conference was held and the amount of time that the parties conferred; (c) the matters that were resolved by agreement; and (d) the specific matters that need to be determined by the Court on Plaintiff's Motion to Compel Discovery [Dkt. No. 30].

SO ORDERED.

DATED: February 26, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE